UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY WILLIAMS,<br><br>             Plaintiff,<br>   vs.<br><br>SCRIBD, INC., a corporation; et al.,<br><br>             Defendants. | CASE NO. 09cv1836-LAB (WMc)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |

I.    Introduction

Plaintiff Larry Williams is a commodities trader who writes books and conducts seminars on the subject. He holds a copyright in many of his books. Defendant Scribd is a "social publishing" website that allows authors and other members of the public to upload written content. Scribd considers itself a "powerful tool that removes barriers between authors, publishers, and readers." (Consagra Decl. ¶ 4.) Williams, however, considers it a copyright infringer. He alleges that a Scribd member who uses the alias "GalaxiaMia Guy"[1] uploaded onto the Scribd website, with Scribd's knowledge and assistance, hundreds of pages of Williams's copyrighted material, amounting to at least six of Williams's books. (FAC ¶ 19.) He also alleges that Scribd was slow to remove the material upon his request

---

[1] GalaxiaMia Guy is also named as a Defendant ("Doe 1") in this case.

that it do so.  Williams brings causes of action for copyright infringement, contributory copyright infringement, vicarious copyright infringement, and misappropriation of the right of publicity.

## II.     Procedural History

Williams filed his complaint on August 25, 2009, and Scribd moved to dismiss on November 30, 2009.  Around the time that Williams's opposition brief was due, he filed an amended complaint. Three days later, with the motion to dismiss still on the Court's calendar and the legitimacy of the amended complaint in question, Williams filed an opposition brief. The amended complaint was in fact untimely under Rule 15 of the Federal Rules of Civil Procedure, and the Court ordered Williams to obtain Scribd's consent to amend, or else persuade the Court that leave to amend should be granted.  (Doc. No. 11.)

The Court subsequently granted Williams leave to amend, and gave Scribd the option of either withdrawing its pending motion to dismiss and filing a new one *or* explaining in its reply brief why the amended complaint still failed to state a claim.  Scribd chose the latter course. It filed a reply brief on February 13, 2010, and Williams filed a sur-reply on February 22, 2010.

## III.    Statement of Facts

Williams's amended complaint isn't a model of lucidity.  It appears to be more concerned with anticipating and pleading its way around Scribd's motion to dismiss than actually complying with the mandate of Rule 8 of the Federal Rules of Civil Procedure that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  For example, the complaint isn't as up front as it ought to be about which of Williams's copyrighted works were allegedly infringed by Scribd; Scribd's counsel has been put to the trouble of composing a detailed chart making sense of it all. Williams also omits to mention that his counsel and a "Copyright Agent" for Scribd were in continual touch with respect to uploaded, copyrighted works that Scribd was attempting to be diligent in removing.

As the Court reads the complaint, three works are at issue:

**The Secret of Selecting Stocks for Immediate and Substantial Gains:** Williams alleges he discovered this work on Scribd's website in March of 2009 and demanded that it be taken down. (FAC ¶ 34.) It appeared again on March 31, 2009, on April 1, 2009, and was still available, allegedly, as of May 7, 2009. (*Id.*)

**The Right Stock at the Right Time:** This was discovered on Scribd's website in March of 2009, taken down, discovered again on May 7, 2009, and taken down again. (FAC ¶ 35.) It was again on Scribd's website in August and October, 2009, once as a derivative work with the different title "2003 - 10 Year Pattern-in-the-United States Stock Market." It didn't disappear until January of 2010. (*Id.*)

**Long Term Secrets to Short Term Trading:** Williams alleges he found this work on Scribd's website in March of 2009 and demanded it be removed on March 25, 2009. It was there, again, on May 7, 2009.

Confusing matters slightly, Williams also alleges, but not until laying out his actual claims for relief, that Scribd distributed the following copyrighted works: *Larry Williams Forecast 2009*; *Inner Circle Workshop Notes*; *A Classic Larry Williams Trading Pattern*; *The False Break Buy & Sell Pattern*; *My Million Dollar Stock Market Concept*; and *How to Trade Better*. (FAC ¶ 38.) He does not specify when these works were discovered on Scribd's website or when, if ever, he made a demand that they be removed.

There is another side to this story that Williams omits to mention — and by so doing risks denting his credibility with the Court. Scribd presents a good amount of evidence that it was immediately responsive to many of Williams's requests that his copyrighted material be removed from the website. For example, Scribd was notified by Williams that it was infringing his copyright in *The Secret of Selecting Stocks* on March 30, 2009, March 31, 2009, April 1, 2009, May 12, 2009, and May 15, 2009, and each day Scribd removed the infringing content from its website. The impression one gets reading Williams's complaint is that infringing material was uploaded to Scribd's website and then lingered there; the truth is more likely that Williams and Scribd were together playing a game of Whac-A-Mole, with Williams monitoring Scribd for the presence of his copyrighted material and Scribd removing

it from the website as expeditiously as possible upon a request from Williams — although Williams alleges that it sometimes took multiple requests to get Scribd to act.

**IV.     Legal Standard**

A rule 12(b)(6) motion to dismiss for failure to state a claim challenges the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In considering such a motion, the Court accepts all allegations of material fact as true and construes them in the light most favorable to the non-moving party.  *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007).  A complaint's factual allegations needn't be detailed, but they must be sufficient to "raise a right to relief above the speculative level . . . ."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[S]ome threshold of plausibility must be crossed at the outset" before a case can go forward.  *Id.* at 558 (internal quotations omitted).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

While a court must draw all reasonable inferences in the plaintiff's favor, it need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotations omitted).  In fact, no legal conclusions need to be accepted as true.  *Ashcroft*, 129 S.Ct. at 1949.  A complaint doesn't suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.*  That includes a mere formulaic recitation of the elements of a cause of action; this will not do either.  *Bell Atlantic Corp.*, 550 U.S. at 555.  The general point of these pleading requirements is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

//

//

## V.     Preliminary Issues

In addition to arguing that Williams's individual claims fail to state grounds upon which relief may be granted, Scribd makes two big-picture arguments for the dismissal of Williams's action that the Court can address at the outset. The first is that Scribd qualifies as a "service provider" under the Digital Millennium Copyright Act ("DMCA") and is entitled to "safe harbor" protections that insulate it from liability for copyright infringement. The second is that, *as a matter of fact*, Scribd was highly responsive to Williams's request to remove his copyrighted materials from the website, and that the documents proving as much can be considered by the Court even at the motion to dismiss stage.

### A.     The DMCA's "Safe Harbor"

The Digitial Millennium Copyright Act provides a "safe harbor" to so-called "internet service providers" that, if certain conditions are met, insulates them from liability for copyright infringement. "A service provider shall not be liable . . . for infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by the service provider." 17 U.S.C. § 512(c)(1). In other words, as Scribd would likely put it, it isn't Scribd's fault that a member, GalaxiaMia Guy, uploaded to the site copyrighted materials that he shouldn't have, especially when Scribd made a diligent effort to remove those materials forthwith. That depends on whether Scribd is a service provider in the first place, and can satisfy the statutory requirements for the safe harbor. **First**, a service provider is only eligible if it

> (A) has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers; and (B) accommodates and does not interfere with standard technical measures.

17 U.S.C. § 512(i)(1). **Second,** a service provider's liability is exterminated if it

> (A)(i) does not have actual knowledge that the material or an activity using the material on the system or the network is infringing;
>
> (ii) in the absence of such knowledge, is not aware of the facts or circumstances from which infringing activity is apparent; or

>(iii) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;
>
>(B) does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and
>
>(C) upon notification of claimed infringement . . . responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity.

17 U.S.C. § 512(c)(1). **Third**, "limitations on liability . . . apply to a service provider only if the service provider has designated an agent to receive notifications of claimed infringement." 17 U.S.C. § 512(c)(2).

Scribd argues that "[w]hether a defendant qualifies for the safe harbor is properly resolved on a motion to dismiss." That may be true in cases where the answer to the question is nearly obvious, *see Brave New Films 501(c)(4) v. Weiner*, 626 F.Supp.2d 1013, 1018 (N.D. Cal. 2009), but it isn't true here. There are open questions in this case about the extent to which Scribd benefitted financially from the uploads of Williams's copyrighted materials, whether Scribd had actual knowledge of the infringing uploads, whether Scribd was expeditious in removing Williams's materials from the website, and, indeed, whether Scribd is a service provider in the first instance. All of these questions are integral to the safe harbor analysis, and the Court isn't inclined to go out of its way to resolve them now. In fact, it would be improper for the Court to do so. *See Goddard v. Google, Inc.*, 640 F.Supp.2d 1193, 1200 n.5 (N.D. Cal. 2009) (affirmative defenses ground for dismissal under Rule 12(b)(6) when they are *apparent from the face of the complaint*); *see also Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004) (whether AOL qualifies for safe harbor limitation from liability is a triable question of fact). Scribd can renew the argument that it satisfies the DMCA's safe harbor standard in its motion for summary judgment, or at trial, if necessary.

### B.     Consideration of Extraneous Documents

Scribd argues that "it is undisputed that each time Plaintiff gave proper notice [of infringement], Scribd promptly removed access to the allegedly infringing works within one day." It offers as evidence a series of email correspondences between Williams's lawyer

Kurt Hallock and a "Copyright Agent" for Scribd named Jason Bentley. The gist of their emails is that each and every time Williams notified Scribd of infringing material on its website, Scribd expeditiously removed it — typically on the same day. Scribd asks the Court to consider these emails in ruling on its motion to dismiss. The Court doesn't believe it can.

In ruling on a motion to dismiss, courts may generally consider allegations in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007). Courts may also consider documents incorporated by reference in the complaint. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Scribd believes the emails can come in because Williams "relied on *omitting* them to allege knowledge of infringement and to attempt to prove that Scribd is not entitled to a safe harbor defense." It relies on *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). *Swartz* can't do the work that Scribd needs it to, however. A full-length quotation from the opinion is appropriate:

> [I]n order to prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based, a court may consider a writing *referenced* in a complaint but not explicitly incorporated therein if the complaint *relies on the document* and its authenticity is unquestioned. Here, Swartz brought a breach of contract claim against KPMG and referred explicitly to the engagement letter. The authenticity of the letter is not in dispute.

*Id.* at 763 (internal quotations and citations omitted) (emphasis added). The email responses from Scribd to Mr. Hallock are not referenced in Williams's complaint, nor does the complaint rely on them. The Court certainly understands where Scribd is coming from; the emails back and forth between Mr. Hallock and Mr. Bentley are highly suggestive that Scribd expeditiously removed infringing materials from its website, and they are a glaring omission from Williams's complaint. Nonetheless, they are the stuff of a summary judgment argument, or defense at trial; the Court will not rely on them for the purposes of ruling on Scribd's motion to dismiss.

It's worth noting, also, that the question of Scribd's responsiveness to Williams's notices of infringement doesn't go to the merits of his copyright claims, but rather to whether Scribd is entitled to the safe harbor protections of the DMCA. The Court has already

determined that this question isn't suitable for adjudication at the motion to dismiss phase. Finally, as telling as the correspondences between Mr. Hallock and Mr. Bentley are, and as damaging as they may be, ultimately, to Williams's case, it is not obvious that the correspondences submitted by Scribd are exhaustive, and cover every instance of infringement alleged by Williams. Here, Williams's complaint is, in a sense, successfully vague; by not itemizing every notification of infringement he submitted to Scribd, Williams leaves open the possibility that some notifications either went unaddressed or were addressed in an untimely manner. But these are just observations; the emails between Mr. Hallock and Mr. Bentley that Scribd asks the Court to consider are part of an evidentiary defense to Williams's claims. It is not appropriate to consider them in ruling on the question whether Williams has failed to state a claim upon which relief can be granted.

**VI. Discussion**

Williams's claims are for copyright infringement, contributory copyright infringement, vicarious copyright infringement, and misappropriation of the right of publicity. The Court will address them in sequence.

**A.    Copyright Infringement**

A plaintiff bringing a claim for *direct* copyright infringement must demonstrate "(1) the ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Additionally, at least in the case of a defendant website or internet service provider that "automatically transmits users' material, but is itself totally indifferent to the material's content," there must be volitional conduct on the part of the defendant. *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 551 (4th Cir. 2004).[2]

//

---

[2] This proposition may not be as self-evident as Scribd would have the Court believe, even if it is ultimately true. The defendant in *CoStar Group*, as the Court reads the case, was an internet service provider, and the Court has explicitly passed on that question with respect to Scribd for the purposes of ruling on a motion to dismiss. Scribd also cites *Religious Tech. Cir. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F.Supp 1361 (N.D. Cal. 1995), another case in which the defendant was an internet service provider. Nonetheless, the proposition is likely true in this case, and Williams lodges no objection to it.

Scribd argues that Williams doesn't, and can't, allege volitional conduct on the part of Scribd that is a sufficient basis for a copyright infringement claim against it. After all, it was Defendant GalaxiaMia Guy who actually did the uploading of Williams's work to the Scribd website. Williams's response to this is that GalaxiaMia Guy and the CEO of Scribd, Trip Adler, are "friends" on the Scribd website, and that "the CEO of Scribd must have been in communication with Galaxia Mia and was helping, approving of, and encouraging GalaxiaMia's infringing activities."[3]  (Doc. No. 16, p.8.)  This rebuttal is quite thin; it's no secret that the "friend" label means less in cyberspace than it does in the neighborhood, or in the workplace, or on the schoolyard, or anywhere else that humans interact as real people. *See* Aimee Lee Ball, *Are 5,001 Facebook Friends One Too Many?*, N.Y. TIMES, May 28, 2010, at http://www.nytimes.com/2010/05/30/fashion/30FACEBOOK.html.  It is highly unlikely that just because GalaxiaMia Guy and Adler were friends on Scribd's website that Adler "was helping, approving of, and encouraging" the former's uploads of Williams's copyrighted material to the website.

But is such an assertion enough to survive a motion to dismiss? No. The factual allegations in a complaint must "raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The actual relationship between Galaxia Mia Guy and Adler, their "friendship" of dubious significance notwithstanding, is wholly speculative, and by itself insufficient to allow the court to draw the "reasonable inference" that Scribd *volitionally* infringed Williams's copyright. *Iqbal*, 129 S.Ct. at 1949. At best, Williams has succeeded in raising the *possibility* that Scribd is liable for direct copyright infringement, given that Adler and GalaxiaMia Guy *may* know one another, and that Adler *may* have been aware of GalaxiaMia Guy's infringing uploads to the Scribd

---

[3] Scribd takes issue with the fact that this argument appears for the first time in Williams' sur-reply, noting that Williams's first amended complaint "only applied the 'friend' argument in context of the *contributory* copyright infringement claim." (Doc. No. 17, p.4.) This is true, but not so true that the Court is inclined to strike the argument. Williams alleges in his complaint, "Defendant Galaxiamia has or had Defendant Scribd's CEO, Trip Adler, listed as his only friend on the Scribd website. CEO Adler's picture appeared on Galaxiamia's page. Trip Adler is also one of Scribd's founders. Defendant Scribd had access to and knowledge of the infringing activity of Galaxiamia." (FAC ¶ 19.)

website, but *Iqbal* requires more than the "sheer possibility" that this is the case. Williams also alleges the Scribd's conduct was "willful" under the Copyright Act because "Defendants induced, caused, and materially contributed to the infringing acts of others by encouraging, inducing, allowing and assisting others to reproduce and distribute Plaintiff's works on the Scribd.com website." (FAC ¶ 41.) Such a statement runs into the obvious problem that a complaint needs to do more than recite, in formulaic fashion, the elements of a cause of action. *Bell Atlantic Corp.*, 550 U.S. at 555. Scribd's motion to dismiss Williams's claim for copyright infringement is **GRANTED**.

### B. Contributory Copyright Infringement

Williams's second cause of action is for contributory copyright infringement, which imposes liability where "one person knowingly contributes to the infringing conduct of another." *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996). The classic statement of the doctrine appears in *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971): "[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory infringer.'" The elements of contributory infringement are direct infringement by a third party, actual or constructive knowledge by the defendant that third parties were directly infringing, and a material contribution by the defendant to the infringing activities. *In re Napster, Inc. Copyright Litig.*, 377 F.Supp.2d 796, 801 (N.D. Cal. 2005). There is a critical variation in the online context: A plaintiff must allege and show *actual knowledge*:

> We agree that if a computer system operator learns of specific infringing material available on his system and fails to purge such material from the system, the operator knows of and contributes to direct infringement. Conversely, absent any specific information which identifies infringing activity, a computer system operator cannot be liable for contributory infringement merely because the structure of the system allows for the exchange of copyrighted material.

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001).

It is true, as Scribd argues, that Williams's complaint formulaically recites the elements of contributory infringement without alleging specific facts. At the same time, there

is no dispute that GalaxiaMia Guy infringed Williams's copyrights by uploading his works to Scribd's website, nor is there any dispute that Williams notified Scribd of the infringement and asked that his materials be removed from the website. Williams has therefore sufficiently alleged direct infringement by a third party as well as actual knowledge of the infringement on the part of Scribd. What about the material contribution prong of the analysis? The mere failure to remove an infringing item upon suffices, as does the very fact that a website provides the "site and facilities" for direct infringement, regardless of its complicity in individual acts of infringement. *Id.* at 1022. Scribd's motion to dismiss Williams's claim for contributory copyright infringement is therefore **DENIED**.

To be clear, the Court again makes nothing of the fact that Scribd CEO Trip Adler and GalaxiaMia Guy were "friends" on the Scribd website. This fact alone is insufficient to plead knowledge of infringement or material assistance — the second and third prongs of the contributory infringement analysis — just as it was insufficient to plead volition as an element of direct copyright infringement. Williams argues:

> Scribd CEO Trip Adler was the sole 'friend' of Galaxia Mia. As friends, Mr. Adler knew of Galaxia Mia's infringing activities and generally approved of such activities by continuing to be friends with Galaxia Mia. In addition, by publicly listing Galaxia Mia as his friend, Trip Adler sent a firm message to other downloaders that Galaxia Mia's activities were sanctioned by Scribd.

(Doc. No. 16, p.10.) Again, the argument is simply too speculative to carry any weight. As pled in Williams's complaint and subsequently argued in his briefing on the motion to dismiss, seizing on Adler's friendship with GalaxiaMia Guy to tie Scribd to his infringing acts is a shot in the dark. Williams's claim for contributory copyright infringement survives a motion to dismiss for very basic reasons: GalaxiaMia Guy uploaded copyrighted materials to the Scribd webste (direct infringement), Williams brought it to Scribd's attention (actual knowledge), and the Scribd website allegedly enabled the infringement, not to mention that Scribd, also allegedly, failed to remove the infringing materials in a timely manner (material contribution).

//
//

**C.     Vicarious Copyright Infringement**

"Whereas contributory infringement is based on tort-law principles of enterprise liability and imputed intent, vicarious infringement's roots lie in the agency principles of *respondeat superior*." *Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007). To state a claim for vicarious infringement, "a plaintiff must allege that the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *Id.*[4] The Court will address these in reverse order.

Scribd argues that Williams can't state a claim for vicarious copyright infringement because he can't claim, plausibly, that Scribd benefits financially from the alleged infringement. The Court disagrees. "Financial benefit exists where the availability of infringing material acts as a draw for customers." *Ellison*, 357 F.3d at 1078 (internal quotations and citations omitted). The so-called "draw" needn't be substantial. *Id.* at 1079. "The essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of *how substantial* the benefit is in proportion to a defendant's overall profits." *Id.* The essence of Scribd's position is that its website has too many subscribers, and contains too many works, for the copyrighted materials of Williams to qualify as a "draw" for customers, whether "customers" is defined as Scribd subscribers or the advertisers who purchase space on the website. But that misses the very point in *Ellison* that the size of a "draw" is irrelevant to the analysis. Taking *Ellison* at its word, the point seems to be that if

---

[4] Scribd argues that the Supreme Court added to the first element in *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) by requiring that a defendant actually profit from direct infringement "while declining to exercise a right to stop or limit it." In other words, according to Scribd, it isn't enough that it has the "right and ability to supervise the infringing conduct." In *Perfect 10*, however, the Ninth Circuit refers to this addition as dictum and as an "alternate formulation" of the test for vicarious infringement. *Perfect 10*, 494 F.3d at 802. Subsequently, the Ninth Circuit has not required that a defendant to a vicarious infringement claim decline to exercise a right to stop or limit the infringement. *See Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 995 (9th Cir. 2009) (vicarious infringement requires proof that defendant "exercises the requisite control over the direct infringer and that the defendant derives a direct financial benefit from the infringement). *See also Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007) ("Thus, under *Grokster*, a defendant exercises control over a direct infringer when he has both the legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so."")

the presence of infringing material on Scribd's website compels more people to visit the website than otherwise would, thereby making it more attractive to advertisers, Scribd can be said to benefit from the infringement.

Williams alleges as much in his complaint: "Scribd is supported in large part by commercial entities' purchase of advertising space on the site. The value of the space has a direct relationship to the amount of viewers and uploaders of content." (FAC ¶ 14.) "The misuse of the copyrighted works attracts more users to Scribd's website. More users, downloading and uploading as well as viewing increases the advertising revenues for the website and 'monetizes' the infringement of copyrighted works such as Plaintiff's works." (FAC ¶ 17.) "Scribd profited from the display and infringement of Plaintiff's works by inducing many thousands of viewers to its website to read, download, and/or view Plaintiff's works. Scribd's direct economic benefit came from its ability to advertise and 'monetize' the derivative works in iPaper which were reproductions of Plaintiff's works." (FAC ¶ 58.) Scribd would have the Court parse Williams's complaint and find that he only alleges *prospective* financial gain — and fails to allege that his own copyrighted works were monetized by Scribd. That's a fair argument, but it isn't one the Court will pursue in considering a motion to dismiss. If Scribd, thus far, only has the *capability* of monetizing documents by embedding advertisements in them, but didn't generate ad revenues directly or even tangentially from the works of Williams that were uploaded to its site, the evidence will suggest as much once discovery has been taken. Williams alleges the contrary to the Court's satisfaction, however, for the purposes of stating a claim for vicarious infringement upon which relief may be granted.

*Ellison*, in any event, is not the best case for Scribd — and not only because the district court waited until summary judgment to find no evidence that the defendant didn't benefit financially from the infringement at issue. The plaintiff in *Ellison* was a science fiction author, Harlan Ellison; the defendant was America Online. The infringing materials — Ellison's short stories — weren't hosted by AOL in any meaningful sense, but had been uploaded to internet news groups to which AOL provided its subscribers with access. The

Ninth Circuit found "no evidence that indicates that AOL customers either subscribed because of the available infringing material or cancelled subscriptions because it was no longer available." *Id*. at 1079. Such evidence may have been impossible to come by, given that AOL offers its subscribers a "vast array of products and services," the most important of which is access to the internet. *Id.* at 1078. Moreover, the Ninth Circuit was aided by a Congressional finding that "receiving a one-time set-up fee and flat periodic payments for service . . . [ordinarily] would not constitute receiving a financial benefit directly attributable to the infringing activity." *Id.* at 1079 (citing S. Rep. 105-190, at 44). Given that Scribd offers nothing to its users other than content, some copyrighted, some not, it's far easier to presume that infringing content boosts its subscriber base, and with that, its advertising revenues — even if the gains are marginal.[5] Imagine, for example, if a Scribd subscriber got her hands on *Harry Potter* page proofs prior to a book's release and uploaded them to the site; there's no doubt that Scribd would receive heightened traffic during the time those proofs were available for free download. The motion to dismiss phase isn't the time to conclude that while *Harry Potter* is one thing, books and pamphlets about commodities trading are another. Scribd can renew, at the summary judgment phase, its argument that there is no evidence it benefitted financially from the presence of Williams's copyrighted works on its website. Williams's complaint sufficiently pleads the opposite.

That takes care of the second element of a claim for vicarious copyright infringement. As for the first element, Williams needn't show that Scribd declined to stop or limit the infringement of which he complains, but only that it had the right and ability to supervise and control the infringement. But what does that entail? Scribd relies on *Io Group, Inc. v. Veoh Networks, Inc.*, 586 F.Supp.2d 1132 (N.D. Cal. 2008), which held that "the pertinent inquiry is not whether [a defendant] has the right and ability to control its *system*, but rather, whether

---

[5] Scribd criticizes Williams for relying on *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) to support the proposition that a website benefits financially from infringement whenever it draws an audience with infringing material. It is true, as Scribd says, that almost all of the content available on Napster's website was infringing, but surely that needn't be the case in order for individual, infringing items to be a draw to consumers, and for a website to financially benefit from them.

it has the right and ability to control the *infringing activity*." *Id.* at 1151. The defendant in *Io Group* is comparable to Scribd; it "enables the sharing of user-provided video content over the Internet." *Id.* at 1135. The plaintiff, a producer of adult videos, discovered clips of its films on the defendant's website, much like Williams discovered his own copyrighted works on Scribd's website. There's no doubt that the court's thorough analysis in *Io Group* is good for Scribd, especially insofar as it holds that "the right and ability to control infringing activity, as the concept is used in the DMCA, cannot simply mean the ability of a service provider to block or remove access to materials posted on its website or stored on its system." *Id*. at 1151. It quotes a district court in the Central District of California that held "the right and ability to control" "presupposes some antecedent ability to limit or filter copyrighted materials," which is also good for Scribd. *See Tur v. YouTube, Inc.*, Case No. 06 CV 4436, 2007 WL 1893635 at *3 (C.D. Cal. June 20, 2007). It found — and this can also be said of Scribd — "no evidence that [defendant] can control what content users choose to upload before it is uploaded," a consideration that cuts against a finding of vicarious liability. *Io Group*, 586 F.Supp.2d at 1153.

The Court makes much of the fact, however, that a vicarious liability claim was dismissed in *Io Group* at the *summary judgment* phase. Indeed, the court identified as the most important consideration that "there is no indication that Veoh has failed to police its system to the fullest extent permitted by its architecture." *Id.* at 1153. That's a factual finding, and it is in dispute here: Williams denies that Scribd responded to his takedown notices in an expeditious fashion. Moreover, the discussion of vicarious liability in *Io Group* is wrapped up in a discussion of whether the defendant deserves the protection of the DMCA's safe harbor provisions, a question the Court has reserved on here until more evidence is in. When vicarious liability claims are dismissed at the motion to dismiss phase, they are far less plausible than the one Williams asserts. *See, e.g., Perfect 10*, 494 F.3d at 803–06 (credit card company not vicariously liable for copyright infringement on websites to which it processed payments).

//

Finally, *A&M Records* is instructive. In that case, the court found a likelihood of vicarious liability on the part of Napster, a file-sharing website, because (as the Ninth Circuit in *Perfect 10* explained) it "provided users with the tools to enable the easy reproduction and distribution of the actual infringing content and to readily search out and identify infringing material." *Perfect 10*, 494 F.3d at 803–04. "Napster also had the right and ability to block user access to its program and thereby deprive particular users of access to their forum and use of their location and distribution tools." *Id*. at 804. The Court finds that Williams alleges a sufficiently similar set of facts in his complaint. Though it's true, as Williams concedes, that the ability to supervise and control infringing activity requires more than the simple ability to remove infringing material, *Io Group*, 586 F.Supp.2d at 1152, it's also true that Williams doesn't base his vicarious liability claim on just that. For example, Williams alleges that even after Scribd removed his copyrighted materials from its website, it knowingly allowed them to remain, ready for downloading, at another website location. (FAC ¶ 34.)

There is no doubting that Williams's claim for vicarious copyright infringement — like his claim for contributory infringement — is thin, but it isn't so thin that it can't survive Scribd's motion to dismiss.[6] In fact, Scribd seems to have all of its arguments for summary judgment already teed up.

### D.   Misappropriation of Right of Publicity

The last claim to be considered is Williams's claim for misappropriation of the right of publicity. Scribd argues that this claim is disposed of by the Communications Decency Act, under which "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230.[7] Because there are open questions in this case about the extent to which Scribd participated in the alleged infringement — and wasn't just "provided" with

---

[6] To be clear, the Court does not consider Adler's alleged "friendship" with GalaxiaMia Guy for the purposes of determining whether Williams has stated a claim for vicarious copyright infringement.

[7] Williams mistakes this argument entirely, interpreting it as an argument that the misappropriation claim is preempted by the Copyright Act.

Williams's works by GalaxiaMia Guy — it is inappropriate to make an immunity determination at this time. *See Batzel v. Smith*, 333 F.3d 1018, 1035 (9th Cir. 2003). Defendants can renew this argument in their motion for summary judgment.

## VII.   Conclusion

Williams's claim for direct copyright infringement is **DISMISSED**. Leave to amend is denied because the Court believes it would be futile. Williams's three other claims, for contributory infringement, vicarious infringement, and misappropriation of the right of publicity, survive Scribd's motion to dismiss, however. Based on the evidence and the pleadings, the Court is inclined to say that it appears Scribd has the better arguments in this case; Scribd's motion to dismiss is largely denied only because it is too early to raise those arguments. Williams should give serious consideration to whether he sincerely believes Scribd does not qualify for the safe harbor protections of the DMCA, as well as whether Scribd did not act as expeditiously as possible to remove Williams's copyrighted works from its website as soon as it was asked to do so. Finally, the Court believes minimal and expedited discovery will be sufficient to inform summary judgment, and it encourages the assigned magistrate judge to draft an appropriate discovery order with that admonition in mind.

**IT IS SO ORDERED**.

DATED: June 23, 2010

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge